UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY EDWARDS,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>JIM ROBERTSON, Warden,<br><br>　　　　　Respondent. | Case No. 5:23-cv-00126-MEMF-KES<br><br>ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT SUMMARILY DISMISS THIS PETITION |

## I.
## INTRODUCTION.

On January 23, 2023, the Court received from Petitioner Anthony Edwards ("Petitioner") a Petition for Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254. (Dkt. 1 [the "Petition."]) Petitioner challenges (1) his 1998 convictions for murder and robbery (Grounds One, Two, and Three) and (2) the 2020 denial of his request for resentencing under California Penal Code section 1170.95 (Ground Four). (Id. at 2, 10, 32, 34, 39.[1]) He attached several exhibits to the Petition. (Id. at 48 (Exhibit List).) The exhibits include:

Exhibit A: A March 6, 2003 initial Report & Recommendation ("R&R")

---
[1] Page citations refer to the pagination imposed by the Court's e-filing system.

1

1  from his first federal habeas case challenging his 1998 convictions, <u>Anthony A.</u>
2  <u>Edwards v. A. Lamarque</u>, No. 5:00-cv-00406-RT-Mc (C.D. Cal.) ("<u>Edwards I</u>").
3  (Dkt. 1 at 49-74.)
4      <u>Exhibit B</u>: Transcripts of the San Bernardino County Superior Court
5  ("SBSC")'s 2020 denial of his request for resentencing under Penal Code section
6  1170.95 in case no. FSB14718. (Dkt. 1 at 75-92.)
7      <u>Exhibit C</u>: A May 17, 2021 Court of Appeal opinion affirming the denial of
8  resentencing in appellate case no. E075312. (<u>Id.</u> at 93-110.)
9      <u>Exhibit D</u>: A December 17, 1999 Court of Appeal opinion from Petitioner's
10 direct appeal of his 1998 convictions. (<u>Id.</u> at 111-137.)
11     <u>Exhibit E</u>: Documents from the 1998 trial court record including (a) jury
12 instructions (<u>id.</u> at 138-44, 159-62); (b) trial testimony transcripts (<u>id.</u> at 145-58);
13 (c) closing argument transcripts (<u>id.</u> at 163); and (d) transcripts of discussions
14 about responding to a jury note (<u>id.</u> at 164-67).
15     Petitioner also filed a "Motion to File Petition." (Dkt. 2.) In that motion, he
16 asks for an adjudication of his Petition's merits "without Ninth Circuit
17 Authorization" because the Petition is "not second or successive." (<u>Id.</u> at 2.) He
18 alleges that he could not have brought these claims earlier because they depend on
19 California's Proposition 1437 enacted in 2019. (<u>Id.</u> at 7-8.)
20     Rule 4 of the Rules Governing § 2254 Cases in the United States District
21 Courts requires the district court to dismiss a habeas petition "[i]f it plainly appears
22 from the petition and any attached exhibits that the petitioner is not entitled to
23 relief in the district court...." The Court has considered the Petition and identified
24 the following potential defects that could result in summary dismissal:
25     • Under Rule 2(c)(5), all § 2254 petitions must be signed under penalty of
26 perjury. Because the instant Petition does not include the standard form's final
27 page, it has no signature, let alone a signature under penalty of perjury.
28     • Ground Four, while labeled a due process claim, appears to be based on

state law and therefore fails to present a cognizable claim for federal habeas relief. Because it was denied by the California Supreme Court "without prejudice," it may also be unexhausted.

• Grounds One, Two, and Three all challenge Petitioner's 1998 convictions. Petitioner's request for relief on these grounds appears to constitute a successive petition for which Petitioner must receive Ninth Circuit authorization to proceed.

The Court, therefore, issues this Order to Show Cause ("OSC") why the Petition should not be summarily dismissed.

## II.
## FACTUAL BACKGROUND.

To understand the context of Petitioner's arguments, the Court includes in italics the evidence summarized in the unpublished California Court of Appeal's decision on Petitioner's direct appeal. People v. Edwards, No. E075312, 2021 Cal. App. Unpub. LEXIS 3184, 2021 WL 1957284 (Cal. Ct. App., 4th Dist., Div. 2 May 17, 2021); (Dkt. 1 at 111-16.)

*Richard Moore owned a gun shop and firing range in San Bernardino. On the evening of Monday, May 26, 1997, as Moore closed the shop, he washed all the glass display counters with soapy water.*

*The next morning, Dave Mortensen, the manager of the gun shop and shooting range, opened the store; the range and gun shop normally opened for business at approximately 9:00 a.m.*

*At 8:59 a.m. on May 27, Richard Hamer was driving past the gun shop. He saw two Black men standing in the open doorway of the business. One of the men was tall and thin, standing over six feet tall and weighing about two hundred pounds. The tall man had short-cropped hair. The second man was shorter than the first. [Petitioner] is over six feet tall and weighs one hundred eighty pounds.[FN: During his police interview, [Petitioner] implicated a person named "Nino" as the shooter and robber. However, "Nino" was described as*

*approximately 6'2" and as being more muscular than [Petitioner], or "buff." The witness's description of the taller suspect matched [Petitioner], so the second suspect was not likely "Nino."]*

*John Bradford went to the shooting range at approximately 9:30 a.m. He noticed when he arrived that the internal security gate was open. When Bradford called out to Mortensen, no one answered. Bradford also noticed that papers and other items were strewn around the shop; this was very unusual. Bradford became alarmed and summoned help from a neighboring business.*

*Mario Gomez, from the towing business next door, accompanied Bradford to the shooting range premises. Bradford turned on the monitors for the security cameras inside the business. Both Bradford and Gomez saw Mortensen's legs on the screen. Gomez called the police.*

*Mortensen had been shot four times; the four shots caused multiple entry and exit wounds. The pathologist testified at trial that Mortensen had suffered wounds to the arms, neck, and torso. He had been shot in the back of the head, and then shot in the head a second time as a "coup de grace."*

*Sixteen guns, one rifle, three thousand rounds of ammunition, money from the cash register, and Mortensen's wallet and car keys were missing.*

*Data recovered from the cash register tape showed that gun rental, ammunition, admission fees for two customers, and two training targets had been purchased at approximately 9:04 a.m. The sign-in sheets for May 27, 1997, were missing. [Petitioner]'s name was on a sign-in sheet for an earlier date, however.*

*Three days after the shooting, on May 30, 1997, a police officer stopped [Petitioner] for a traffic violation. The officer arrested [Petitioner] for his outstanding warrants. When officers searched the car [Petitioner] was driving when he was stopped, they found a loaded gun under the driver's seat. Ballistic evidence ultimately proved this gun was the murder weapon.*

*Forensic evidence at the crime scene linked [Petitioner] to the murder.*

*Criminalists lifted numerous fingerprints and palm prints from the glass counter tops and other locations in the shooting range.  [Petitioner]'s palm print was on one of the paper targets, and [Petitioner]'s palm prints and fingerprints were on the counter tops.  At least nine prints were positively identified as defendants'. [FN: Although Lorenzo Bailey, aka "Nino," aka Larry Dean Bailey, has a criminal record, none of the latent prints matched "Nino's."]*

    *Shoe prints from at least two types of shoes had been tracked in blood at the scene.  One pair of shoes had a Vibram sole, and the other had a dot pattern on the sole.  Two persons had therefore participated in the robbery and murder. [Petitioner] owned a pair of shoes with Vibram soles.  The victim had some black, curly hair gripped in his hand at death.  The hair matched [Petitioner]'s hair.*

    *After he was arrested for Mortensen's death, [Petitioner] agreed to talk to police.  He at first denied any involvement in the killing, but later stated he had been at the shooting range with someone he identified only as "Nino." [Petitioner] claimed he had gone simply to use the firing range; Nino shot Mortensen and then forced defendant to help remove property after Mortensen had been killed.*

    *The People filed an amended felony complaint charging defendant with Mortensen's murder, alleging he had personally used a firearm in the commission of the offense, and with one count of second degree robbery.  [Petitioner] was held to answer on both charges.*

    *The People filed an information in superior court charging defendant with murder and with robbery, and alleging that defendant had personally used a firearm in the commission of the murder.  The People later amended the information to charge the special circumstance that the murder was committed in the course of a robbery.  (§ 190.2, subd. (a)(17).)*

    *Apparently at defendant's request, after the evidence had closed, the court instructed on an additional charge, that [Petitioner] was an accessory after the*

*fact to the robbery and murder.*

*Twelve jurors and two alternates were sworn to try the charge. During trial, two jurors were excused and replaced by the alternates. When argument and deliberations began, one of the sitting jurors became ill. The parties discussed the possibility of proceeding to verdict with 11 jurors if the ill juror did not improve. [Petitioner] personally stated on the record that he agreed to proceed with 11 jurors if the ill juror had to be excused. Shortly thereafter, the juror was excused for illness. [Petitioner], defense counsel, and the prosecutor all expressly agreed to waive their respective rights to a mistrial and to proceed with 11 jurors.*

*The jury found [Petitioner] guilty on all charged offenses, including the added accessory charge.[FN: This charge was added after [Petitioner] requested that the jury be instructed on aiding and abetting after the fact, during in limine proceedings. There, defense counsel argued that [Petitioner] did not realize the murder was going to happen and that he was surprised by the shooting, and that [Petitioner] intended to argue he was guilty of violating section 32 for failing to call the police. During his argument to the jury, the prosecutor declined to even discuss this theory because it was the People's position that [Petitioner] murdered and robbed the victim.] The jury also found the special circumstance allegation true, and found true the allegation that [Petitioner] had personally used a firearm in the commission of the murder.*

*The court sentenced [Petitioner] to life without the possibility of parole (LWOP) for the special circumstance murder of Mortensen. The court also imposed the upper term of five years for the robbery plus the middle term of four years for the gun use enhancement. [Petitioner]'s total determinate term was thus nine years. The court stayed the middle term of two years for the accessory-after-the-fact conviction.*

(Dkt. 1 at 111-16.)

# III.
# PROCEDURAL HISTORY.

### A. Direct Appeal.

Petitioner appealed his 1998 convictions. The California Court of Appeal affirmed the convictions but modified the sentence. (Dkt. 1 at 137.) Specifically, the Court of Appeal prepared a new abstract of judgment staying Petitioner's sentence on the robbery count and reflecting the trial court's imposition of a concurrent sentence on the robbery count. (Id.)

Petitioner petitioned the California Supreme Court for review, which it summarily denied. People v. Edwards, No. S085394, 2000 Cal. LEXIS 3287 (Cal. Mar. 29, 2000).

### B. State Habeas Proceedings.

Petitioner filed state habeas petitions with the SBSC and California Court of Appeal. (Dkt. 1 at 4.) Petitioner then petitioned the California Supreme Court for a writ of habeas corpus, which denied that petition. In re Edwards, No. S224831, 2015 Cal. LEXIS 3545 (2015). Next, he petitioned the United States Supreme Court for a writ of certiorari, which it denied. Edwards v. California, 577 U.S. 1076 (2016).

### C. Federal Habeas Proceedings.

In 2000, Petitioner filed his first federal habeas petition, Edwards I. He raised claims based on the eleven-person jury and instructional error regarding intent to kill. (Dkt. 1 at 51.) In an initial R&R, the magistrate judge found that the California Court of Appeal had unreasonably denied Petitioner's instructional error claim and that the error was not harmless. (Id. at 73-74); Edwards I, Dkt. 33. The magistrate judge interpreted the jury's verdicts as not necessarily indicating that the jury believed Petition was the actual shooter. (Id. at 73.)

After receiving objections, the magistrate judge issued a Second and Superseding R&R that found the instructional error harmless. Edwards I, Dkt. 38.

1  The magistrate judge found "overwhelming evidence" that Petitioner was a major
2  participant in the robbery and the jury's finding that he personally used a firearm
3  meant that he acted with reckless indifference to human life. Id., Dkt. 38 at 24-25.
4  Under California law, this supported his conviction for felony-murder with special
5  circumstances, even if Petitioner was not the actual shooter. Id., Dkt. 38 at 23.

The district judge adopted the Second R&R but granted a certificate of appealability on the following issues:

(1) Whether the petitioner was deprived of a jury determination of every element of the crime when the trial court failed to instruct that the jury must find intent to kill if the petitioner was convicted on an aider and abettor theory; and

(2) Whether the failure to so instruct had a substantial or injurious effect on the outcome of the trial.

Id., Dkt. 42, Dkt. 52.

Petitioner missed the deadline to file a notice of appeal with the Ninth Circuit and filed his request to extend that deadline too late. Edwards v. LaMarque, 151 F. App'x 515, 516 (9th Cir. 2005). The Ninth Circuit dismissed his untimely appeal for lack of jurisdiction. Id. He then petitioned the United States Supreme Court for certiorari, which it denied. Edwards v. Evans, 547 U.S. 1006 (2006).

In 2009, Petitioner filed another federal habeas petition. Edwards v. Adams, No. 5:09-cv-01937-VAP-FFM (C.D. Cal. Oct. 15, 2009) ("Edwards II"). After determining that the claims for relief all challenged the same 1998 convictions as Edwards I, the district court summarily dismissed the petition as successive. Id., Dkt. 4.

**D. State Resentencing Proceedings.**

"On March 15, 2019, [Petitioner] filed a petition for resentencing under section 1170.95" in the SBSC. (Dkt. 1 at 99.) At proceedings on March 13, 2020,

he was represented by counsel. (Id. at 77.) Counsel argued that the jury had not necessarily found that Petitioner was a "major participant" who acted with "reckless indifference to human life," such that "at the very least he should get his OSC" in the resentencing proceedings. (Id. at 79.) The SBSC judge continued the proceedings so that he could read the trial transcripts and counsel could brief relevant cases including People v. Lewis. (Id. at 85.)

On July 1, 2020, the trial court denied the resentencing petition. The court found that it could consider "the appellate court opinion from the underlying trial in determining whether a prima facie case for relief can be made." (Id. at 88.) The court found that Petitioner could have been convicted as the actual killer, making it "unnecessary for the Court to engage in an analysis regarding the major participant theory." (Id. at 90.)

Petitioner appealed to the California Court of Appeal, arguing that the lower court had erred by not finding a prima facie case for relief and issuing an OSC. (Id. at 99); see also People v. Edwards, No. E075312, 2021 Cal. App. Unpub. LEXIS 3184, at *7, 2021 WL 1957284, at *3. On May 17, 2021, the Court of Appeal affirmed, holding, "Because the record of conviction refuted the allegations of his petition, the [trial] court was not bound to accept them as true and was not required to issue an order to show cause." (Dkt. 1 at 108.)

Petitioner petitioned the California Supreme Court. That court denied review "without prejudice to any relief to which petitioner might be entitled after [it] court decides People v. Lewis, S260598."[2] People v. Edwards, No. S268947, 2021 Cal. LEXIS 5171 (Cal. Jul. 21, 2021). It is unclear if Petitioner has exhausted this claim by renewing his request for relief from the state courts after

---

[2] In Lewis, the California Supreme Court considered, "May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?" People v. Lewis, 11 Cal. 5th 952, 957 (2021). On July 26, 2021, the Court issued a decision holding that trial courts can consider the record of conviction, but "only *after* the appointment of counsel and the opportunity for briefing." Id.

9

the California Supreme Court's decision in <u>People v. Lewis.</u>

## IV.
## GROUNDS FOR RELIEF.

<u>Ground One:</u> There is insufficient evidence to support Petitioner's murder conviction. (Dkt. 1 at 10.) Petitioner argues, "there must be sufficient evidence Petitioner himself killed David Mortensen, aided the killer with intent to kill, or was a recklessly indifferent major participant. There is not." (<u>Id.</u> at 11.)

<u>Ground Two:</u> Petitioner's "continued incarceration under amended statutes that no longer prohibit his conduct violates the Due Process Clause." (<u>Id.</u> at 32.) Petitioner cites <u>Fiore v. White</u>, 531 U.S. 225 (2001) for the premise that "statutory amendments and accompanying court interpretations … are retroactive to final convictions." (Dkt. 1 at 32.) Petitioner argues, "Although [my] case involves a change in the statutes themselves … the effect is the same." (<u>Id.</u>)

<u>Ground Three:</u> Trial counsel rendered ineffective assistance by failing to retain a ballistics expert in a timely fashion. (<u>Id.</u> at 34-36.)

<u>Ground Four:</u> "The Due Process Clause of the federal constitution was violated by the state court's disposition of Petitioner's recall petition." (<u>Id.</u> at 39.) Petitioner contends that the trial court "ignored state law, thus rendering its decision arbitrary and capricious." (<u>Id.</u> at 41.)

As previously noted, Grounds One, Two, and Three challenge Petitioner's 1998 convictions. (<u>Id.</u> at 10, 32, 34.) Ground Four challenges his 2021 resentencing denial. (<u>Id.</u> at 39.)

## V.
## DISCUSSION.

**A. Ground Four Does Not Present a Cognizable Federal Habeas Claim.**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits federal habeas corpus relief to claims that "a petitioner has been convicted or sentenced in violation of the Constitution, laws, or treaties of the United States. 28

U.S.C. § 2254(a). This means that relief is not available for errors in the interpretation or application of state law. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011). Regarding the specific claim presented in Ground Four:

> Courts in this district have repeatedly held that whether a petitioner is entitled to resentencing under the amendments effected by Senate Bill 1437 is solely an issue of state law and does not give rise to a claim cognizable on federal habeas. See, e.g., Mays v. Montgomery, 2021 U.S. Dist. LEXIS 104814, 2021 WL 2229082, at *3 (C.D. Cal. Apr. 22, 2021) (collecting cases), accepted by 2021 U.S. Dist. LEXIS 103771, 2021 WL 2223276 (C.D. Cal. June 1, 2021); Cole v. Sullivan, 480 F. Supp. 3d 1089, 1097 (C.D. Cal. 2020) (collecting cases).

Ciron B. Springfield v. Debbie Asuncion, No. 8:19-cv-00013-DDP-AGR, 2023 U.S. Dist. LEXIS 86015, at *9-10 (C.D. Cal. Feb. 24, 2023).

In Ground Four, Petitioner challenges his denial of resentencing under California Penal Code section 1170.95. (Dkt. 1 at 39.) Senate Bill 1437 added that section. S.B. 1437, 2017-2018, Reg. Sess. (Cal. 2018) (as introduced by Senators Skinner and Anderson on February 16, 2018). Ground Four, therefore, falls squarely within this line of precedent.

A state court's misapplication of state sentencing law may violate due process if a petitioner can demonstrate both state sentencing error and that the error was "so arbitrary or capricious as to constitute an independent due process" violation. Richmond v. Lewis, 506 U.S. 40, 50 (1992). However, a habeas petitioner "may not … transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996), cert. denied, 522 U.S. 881 (1997).

Here, the sentencing court held as a matter of state law that Petitioner was categorically ineligible to be resentenced pursuant to Section 1170.95. (Dkt. 1 at

35.) That decision was affirmed on appeal. (Dkt. 1 at 93-110.) The state courts' interpretation of Section 1170.95 in Petitioner's case binds this Court. See Bradshaw v. Richey, 546 U.S. 74, 76, (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Because the state courts determined that Petitioner is ineligible for resentencing under state law, the failure to grant such relief was neither "arbitrary or capricious" nor deprived him of due process. Accord Cole v. Sullivan, 480 F. Supp. 3d 1089, 1098 (C.D. Cal. 2020).

### B. If Ground Four is Dismissed, the Remaining Petition Appears Successive.

#### 1. The Law Prohibiting Successive Petitions.

AEDPA generally prohibits filing more than one federal habeas petition that challenges the same state court judgment, as follows:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
>   (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>   (B)
>
>     (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
>     (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no

reasonable factfinder would have found the applicant guilty of the underlying offense.

(3) (A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(b).

That one federal petition temporally follows another does not necessarily make it a prohibited "second or successive" petition. See, e.g., Slack v. McDaniel, 529 U.S. 473, 478 (2000) ("a habeas petition which is filed after an initial petition was dismissed without adjudication on the merits for failure to exhaust state remedies is not a 'second or successive' petition as that term is understood in the habeas corpus context."). Similarly, "when a new judgment intervenes between the filing of two federal habeas petitions, a petition challenging the new, intervening judgment is not considered 'second or successive.'" Morales v. Sherman, 949 F.3d 474, 476 (9th Cir. 2020).

The Ninth Circuit has developed the following two-part test for determining when a federal habeas petition is successive:

[A] federal habeas petition is second or successive if (1) the facts underlying the claim occurred by the time of the initial petition, and (2) if the petition challenges the same state court judgment as the initial petition.

Hooper v. Shinn, 56 F.4th 627, 633 (9th Cir. 2022) (cleaned up). A factual predicate accrues at the time the constitutional claim ripens—i.e., when the constitutional violation occurs. Id.

**2. Analysis.**

Petitioner filed two prior federal habeas petitions in Edwards I and Edwards II, both challenging his 1998 convictions. He now seeks to bring Grounds One,

Two, and Three, all of which again challenge his 1998 convictions.

Petitioner has not pointed to any new, intervening judgment that was filed since Edwards I. To the extent he argues that the *denial* of his request for resentencing created a new judgment, district courts have rejected this argument. See Cole, 480 F. Supp. 3d at 1096.

Petitioner may argue that Ground Two did not ripen until California enacted Proposition 1437 in 2019. But federal habeas relief sought in a second petition based on new state law still requires Ninth Circuit authorization, as follows:

> [I]f a California petitioner wishes to file a second federal habeas petition based on new law or newly discovered facts, the petitioner must first ask the Ninth Circuit for permission to do so. Without such authorization, the District Court lacks jurisdiction to entertain the successive petition.

Garrett v. Johnson, No. 2:20-cv-00059-AB-KES, 2020 U.S. Dist. LEXIS 28471, at *8 (C.D. Cal. Feb. 18, 2020) (citing Cooper v. Calderon, 274 F.3d 1270, 1274 (9th Cir. 2001), cert. denied, 538 U.S. 984 (2003)).

To the extent Petitioner argues that the factual predicate of Ground Two did not exist until California law changed in 2019, his argument fails, because Petitioner has not alleged the facts needed to support a Fiore claim. A jury convicted Mr. Fiore of violating a Pennsylvania statute that prohibited operating certain hazardous waste facilities without a permit. Fiore, 531 U.S. at 226-27. Subsequently, in a different case, the Pennsylvania Supreme Court interpreted the permitting statute in a way that meant Mr. Fiore's conduct did not fall within its scope. Id. The United States Supreme Court concluded that Mr. Fiore's conviction and continued incarceration for conduct that was never criminal under Pennsylvania law violated the Due Process Clause. Id. at 227-29.

Petitioner does not allege that the evidence in his case never supported his conviction. Instead, he argues that California law changed in 2019, such that his

conduct would not carry the same criminal penalties today.  But a later change in state law "does not invalidate a conviction obtained under an earlier law."  Kleve v. Hill, 243 F.3d 1149, 1151 (9th Cir.2001) (citing Pulley v. Harris, 465 U.S. 37, 42, (1984); Wainwright v. Stone, 414 U.S. 21, 23–24 (1973)).  For example, a motorist convicted of speeding for driving 65 mph in a 55 mph zone is not deprived of due process when his state later decides to raise the speed limit for that highway to 65 mph.  Unlike Mr. Fiore, the motorist's conduct was illegal when he was driving, prosecuted, and convicted.

In sum, the "evolution of state law" does not compel a federal court to grant a writ of habeas corpus.  Pulley, 465 U.S. at 42.  Instead, "state courts should consider [whether to grant relief after changes in state law], if they are so inclined, free of the constraints of the federal writ."  Id.

## VI.
## CONCLUSION.

For these reasons, the Court HEREBY ORDERS Petitioner to show cause, if any he has, why this Court should not summarily dismiss his Petition.  In response to this OSC, Petitioner should:

(1) Provide a signature page for the Petition signed under penalty of perjury;

(2) Explain why Ground Four can proceed as an exhausted federal due process claim; and

(3) Explain why Grounds One, Two, and Three are not barred by AEDPA's rule against successive petitions.

Petitioner must file his response to the OSC by **July 31, 2023**.

DATED: June 21, 2023

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE